United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| Wilem Celestin, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 26-11249-NMG |
| David Wesling, et al., | ) ) ) | |
| Respondents. | ) ) ) ) ) | |

MEMORANDUM & ORDER

GORTON, J.

In his petition for writ of habeas corpus (Docket No. 1) petitioner Wilem Celestin ("petitioner" or "Celestin") contends that David Wesling and other named respondents ("respondents") have violated his statutory and due process rights by refusing to grant him a bond hearing to which he is entitled under 8 U.S.C. §1226(a) ("§1226"). Respondent asserts that petitioner is detained pursuant to 8 U.S.C. §1225(b)(1) ("§1225(b)(1)"). For the reasons that follow, the petition will be allowed.

I.    Background

Petitioner is a native and citizen of Haiti. In 2021, he illegally entered the United States and was apprehended by the Department of Homeland Security ("DHS"). He was released on humanitarian parole under 8 U.S.C. §1182(d)(5) for a term of one

- 1 -

year, which expired in August, 2022.  Upon the expiration of petitioner's parole, the government apparently made no effort to detain him.  He resided in the interior for nearly four years, during which time he filed a Form I-589 Application for Asylum and Withholding, obtained work authorization and had children.

In January 2026, petitioner was arrested by police in Wallingford, Connecticut and charged with infractions related to a car accident that occurred in September, 2025, in which he allegedly departed the scene.  After he was released by the Wallingford Police Department, ICE arrested him and he remains in ICE custody to this day.

## II.  **Legal Standard**

Section 1225 applies to "applicants for admission," who are defined as noncitizens "present in the United States who [have] not been admitted." §1225(a)(1).  Section 1225(b)(1) "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting §1225(b)(1)).  Individuals subject to §1225(b)(1) are generally held in Expedited Removal, without further hearing or review but those who indicate an intention to apply for asylum or express a fear of persecution are referred for an asylum interview.  If the interviewer finds a credible fear of persecution, the alien is

- 2 -

detained for further consideration of that application. §1225(b)(1)(B)(ii).

An alien detained under §1225(b) may be released only if he is paroled for significant public benefit or urgent humanitarian reasons under §1182(d)(5)(A). Such parole is not regarded as an admission of the alien and upon the revocation or expiration of parole, the alien shall

> be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

§1182(d)(5)(A).

Section 1226(a) establishes a discretionary detention framework for aliens arrested and detained pending removal proceedings. Under that provision, the Attorney General may continue to detain the alien, release him on bond or release him on parole. §§1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination but non-citizens have the right to request a custody redetermination (i.e., bond) hearing before an immigration judge. See 8 C.F.R. §§1236.1(c)(8), (d)(1). This Court recently held that §1226(a), rather than §1225(b), applies to aliens who are detained while residing in this country whereas §1225(b) applies to those detained at the border. See, e.g., Lopez-Monteros v. Hyde, No. 25-cv-12629-NMG (D. Mass. Oct. 27, 2025).

- 3 -

III. **Analysis**

a. **Statutory Authority**

Petitioner alleges that he is entitled to a bond hearing under 8 U.S.C. §1226 and that the deprivation of such a hearing violates his due process rights.  The government responds that because he was taken back into the custody from which he was paroled, i.e. §1225, his detention is mandatory and he has no rights beyond those afforded by statute.[1]

The Court agrees that §1225 provides the applicable statutory scheme.  The statute under which petitioner was paroled explicitly requires that upon termination of parole, the alien is to be re-placed into the custody from which he was paroled.  The fact that the government did not return petitioner to the mandatory detention of §1225 for nearly four years does not alter that conclusion. As another session of this court has recently explained in a factually identical case,

> [although] [o]ne might expect that, at some point in those four years of inaction, DHS waived its right to "return" petitioner to detention under section 1225. . . . as a matter of statutory interpretation and federal common law, courts generally must assume that an official's crucial duties are better carried out late than never.

---

[1] Factually, the government is slightly mistaken; petitioner did not apply for asylum at the border and thus he was paroled under §1225(b)(1)(A)(i), not §1225(b)(1)(B)(ii).

Tenemasa-Lema v. Hyde, 810 F. Supp. 3d 244, 251-252 (D. Mass. 2025).  As such, petitioner's detention proceeds pursuant to §1225, not §1226.

Although DHS did not forfeit its statutory power to return petitioner to custody under §1225 at the expiration of his parole, during the four-year interim petitioner lived freely in the interior, establishing the kind of sustained connections to the country that tend to implicate due process concerns.  The government contends that no such concern is present because, pursuant to the statutory mechanism outlined above, petitioner is to be treated as if he were still on the threshold of entry at the border.

The Court is skeptical.  It is well-settled that "aliens who have established connections in this country have due process rights." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020).  Such ties may be relevant to what process an alien is due "even in the absence of strict physical presence" on U.S. soil, i.e. at the border. Tenemasa-Lema, 810 F. Supp. 3d at 253 (recognizing Supreme Court precedent that "a permanent resident was entitled to due process in assessing his right to admission upon returning from a short trip") (citing Landon v. Plasencia, 459 U.S. 21, 32-34 (1982) (internal quotations omitted)).  Accordingly, even if petitioner is to be

treated as if on the precipice of entry, his attachment to the country cannot be ignored.[2]

### b. **Mathews** Factors

Thus, the Court must consider whether petitioner has been afforded sufficient process to justify his detention.  In doing so, the Court turns to the balancing test enumerated in Mathews v. Eldridge: (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest in maintaining the current procedures. 424 U.S. 319, 335 (1976).

The private interest at stake is exceptionally compelling. "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  Although petitioner's detention will expire upon the conclusion of removal proceedings, its exact length is impossible to predict and could be lengthy. Hernandez-Lara v. Lyons, 10 F.4th 19, 29 (1st Cir. 2021).

---

[2] The government's citation to in-district cases are factually distinguishable for that reason.  In those cases, petitioners did not live freely for years following the expiration of their parole. See Luna Banegas v. McDonald, Jr., et al., 25-cv-13161-NMG, ECF No. 11 (D. Mass. Nov. 21, 2025); De Souza Costa v. Wesling, et al., 25-cv-13480-DJC, ECF No. 9 (D. Mass. Dec. 23, 2025); Diallo v. Gillen, 25-cv-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025); Malan Pesantez v. Noem, 26-cv-10106-RGS, ECF No. 9 (D. Mass. Feb. 2, 2026).

The second factor also weighs in favor of relief. Petitioner currently has no procedural mechanism to challenge his detention.  The only path to release is humanitarian parole, which is granted at the discretion of DHS and, in any event, does not test the propriety of detention. See Rincon v. Hyde, 810 F. Supp. 3d 101, 116 (D. Mass. 2025).  In short, the risk of erroneous deprivation is high.

Finally, the Court must consider the government interest at stake, which "ultimately entails an assessment of the public interest." Hernandez-Lara, 10 F.4th at 32.  That analysis presents a closer call.  In addition to the administrative burden associated with providing a bond hearing, the government has a legitimate interest in promptly executing removal orders, and detention may facilitate that process by preventing the detainee from absconding. Id.

Weighed against those important government interests are the societal costs borne by the public.  Individuals who have become residents, regardless of their immigration status, ought not be incarcerated and separated from their families without due process of law.  Here, Celestin is a father and works to support his children.  His detention has undoubtedly placed severe pressure on his family and community at large.

Given the competing and serious interests at play, this factor does not weigh clearly in favor of either side.  The

Court recognizes the importance of the timely execution of deportation orders and the burden, albeit minimal, of providing bond hearings but cannot ignore the human costs borne by the public when families are separated.

In sum, the Court finds that the Mathews factors weigh in favor of providing petitioner with a bond hearing as "an appropriate and minimally invasive additional procedure" to protect his due process rights. Tenemasa-Lema, 810 F. Supp. 3d at 259.

## ORDER

For the foregoing reasons, the petition for writ of habeas corpus (Docket No. 1) is **ALLOWED**, in part, and **DENIED**, in part. The Court directs that, unless Celestin is afforded a bond hearing that complies with the standards in Hernandez-Lara within seven days of the date of this order, he is to be released.

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge


Dated:   April 16, 2026

- 8 -